Please be seated. I'm happy to hear from you. May it please the Court, my name is Ryan Prescott. I represent the appellant, Robert Strother. Unless the panel objects, I'd like to start by discussing the constitutional and statutory framework for appellate review of departure sentences since this Court's decision in Rybicki. The government's response brief argues that Booker invalidated Rybicki by severing and excising section 3553b1 in its entirety. I guess another question I have is why doesn't, to the extent that anything remains of Rybicki after Booker, why doesn't Kimbrough just utterly finish it off? Because Kimbrough could say, like, so this whole framework is I can only depart upward if I, like, I'm taking into account something that isn't adequately taken into account by the guidelines. And Kimbrough says, I can just say, I don't care what the commission thinks. I'm doing X. Right? Like, I just don't understand how, again, if Rybicki has any legs after Booker, Kimbrough doesn't just destroy the rest of them. It's not clear to us, Your Honor, that Booker impacted this Court's analysis in Rybicki much. Impacts? It seems like it obviously impacts. But again, no, but I really get it. The whole framework of Rybicki, and this makes sense, this makes total sense in a world of mandatory guidelines. In a world where the district court has to follow the guidelines, it makes sense to say you've got to really police variances or, let me preface this, I do not understand the difference between a variance and a departure. And I, frankly, in a post-Booker, post-Kimbrough, post-Gaul world, I don't know why I care about the difference between those things. Because the whole premise in Rybicki was, and this, again, it makes total, in a pre-Booker world, district judges have to follow the guidelines. Well, sometimes they might really not want to follow the guidelines, and they might try to get around that by using this little trick called a departure, or a variance, or whatever the heck it's called. Which means we have to police their ability to do that, because otherwise they can just completely get out of mandatory guidelines. Which is all well and good, except then Booker makes the guidelines non-mandatory, and Kimbrough, I'm going to paraphrase, but Kimbrough essentially says, they can just say, I don't care what the Sentencing Commission thinks. And so now I just don't understand why any of this framework makes any sense anymore. Well, the Sentencing Commission agrees with you, Your Honor, and departure sentences are going away a week from Saturday. But for the time being, this court and the district court apply the version of the guidelines. Sure. The version of the guidelines is applicable to Mr. Strzok's offense conduct, and so we're proceeding. But the district court's sentenced in a world that Booker and Kimbrough had been decided. Yes, Your Honor. Okay. Our view, and this is consistent, I mean, with the way the commission describes the post-Booker, post-Freibicke framework for departure sentences, is that following Booker, district courts effectively have two separate procedural tracks by which they're permitted to impose sentences outside the advisory sentencing guidelines. They're permitted to impose, as you say, pursuant to Kimbrough, pursuant to Gall, pursuant to Booker, a variant sentence. I do what I want, right. I mean, I do what I want consistent with 3533. No one is saying they get to do what they want writ large. But I will simply apply 3553. Yes, Your Honor. Alternatively, they can choose to proceed instead of proceeding pursuant to the sentencing authority set forth at 3553A and set forth in Booker. They can proceed pursuant to the sentencing authority set forth by the departure clause of section 3553B1, which says the district court may impose an outside guidelines sentence based on specific circumstances of a kind or of a degree not adequately taken into consideration by the guidelines. How did the variant sentence, I mean, because I think that the departure grounds are subject to probably greater degree of restrictions than variant sentences are. And how does the variant sentence, did that depart from the 3553A factors? I realized that it was a very significant variation from the sentencing guidelines. Sentencing guidelines, maybe not with respect to count two, but with respect to count three, the movement up from what the guidelines recommendation, I guess, was 120 months. And the sentence imposed by the court was 300 months. So that was a significant variance. But how did the variance, the district court explained it, how did the variance vary from the 3553A factors and specifically the danger of recidivism? I mean, part of 3553A is punishment. And punishment certainly seems to fit here given the absolutely horrendous, monstrous nature of the conduct. And so there was just punishment and there was also no assurance that the district court had that this kind of murderous behavior would not be repeated. And that's the danger of recidivism and repetition is also 3553A factor. So, yes, it was a steep, particularly on count three, the jump from 120 months to 300 months was a significant variance. But the question is, was it related in some way or was it unrelated to the 3553A factors to such an extent that we can strike it down as an abuse of discretion when the whole purpose of Gaul seems to be to put district courts in the primary position, in the primary seat with regard to sentencing? It makes it much more of a discretionary exercise. And how does this depart from the 3553A factors, given it is hard even to read about what happened to this man and the fact that he was, you know, just shot point blank and spent the rest of his life in a wheelchair and came within an ace of being killed? And also that was right on the heels of the shooting at Deputy Key. And the district court explained, I don't have any confidence that this isn't going to be repeated. And I don't see how that's, I don't see how that is an abuse of discretion because this is a very serious offenses. So just to make sure I understand Your Honor's question correctly, the question is regarding whether the alternative variance sentence announced by the district court kind of obviates the departure sentence question. Is that the, do I understand you correctly? No, I'm the one that asks the questions. Let me phrase it this way. How in the world is this sentence substantively unreasonable? Yes, Your Honor. In order to discuss the alternative variance sentence and the substantive reasonableness of the sentence, you know, I'd like to take a step back. Sentencing, federal sentencing, you know, since Gaul, since Booker is governed by this tension between, you know, on the one hand the Sixth Amendment says we can't, the discretion of the sentencing judge, that's the red line we can't cross. But Booker, you know, although it does make clear that that's the line you can't cross, it also makes clear that the guidelines are not, it doesn't make the guidelines fully optional. It makes them advisory. They're not mandatory. You can go outside them if you want. But you do genuinely have to think about them because Congress enacted the statutes that serve as the legal authority for the sentencing scheme.  You didn't genuinely think about them as a procedural reasonableness challenge. I'm asking why, but you're not making a procedural reasonableness challenge. You're making a substantive reasonableness challenge. So just to set that tension up, I believe, you know, and I think the next step in the argument for us, Your Honor, is the answer to your initial question, which is, our position is that since Booker, the Departure Clause of Section 3553B1 has continued as an alternative viable track for the district court to go outside the guidelines. It can either impose a departure sentence, which is based on the sentence within the guidelines. Sure, but this district judge accepted the invitation that we gave district courts and says, by the way, so you do, you have to calculate the guideline sentence. You have to figure out what the right answer is under the guidelines, and you have to explain if you're going to depart, why you're going to depart. But also, again, under Booker, under Gall, under Kimbrough, you also can just say, I'm not going to follow the guidelines, and I'm going to apply 3553. And if a district court says that in the alternative, as this district court judge did here, and you don't challenge that what he said here was sufficient to say that, then we just skip directly to the question of, is this a reasonable sentence under 3553? And so then I'll just, I'll re-ask my question. Why is this a substantively unreasonable sentence under 3553? Two pieces to that, Your Honor. I think first, this court can't consider the substantive reasonableness of the sentence in a vacuum. You know, this court held back in Myers and Williams, kind of in the same line of cases, Ezra, Bickey, and Kuhn, that when a district court bases a departure on both permissible and impermissible grounds, this court's harmlessness analysis requires it to determine that the impermissible ground did not affect the court's ultimate imposition of the sentence. The impermissible ground is getting the guidelines wrong? If that were true, then we could never do this assumed harmless error. It can't be that the harmful ground is, you got the guideline. We can't say, because you got the guidelines wrong, saying you would have done the same thing not under the guidelines can't be harmless error because you got the guidelines wrong. Because then you could never do assumed harmless error. I think in a case like this where it's a question of which of these two procedural avenues, the departure clause in 3553B1 or the variant sentence under 3553A, I think Your Honor is correct. You know, I think I have to agree that if the district court had given the exact same 3553A analysis at the end of the sentencing hearing in support of a within-guidelines sentence or within a variant sentence with no discussion of these departure provisions, that likely would have been sufficient to establish the substantive reasonableness of the sentence. Even with the district court's reasonableness, the district court is not going to come off this sentence if there's just a remand to reconsider or do this or do that. He's given detailed reasons for why he imposed the sentence, and he's not going to come off the sentence unless we absolutely forbid it. And so in order to do anything with it, we have to find it, as Judge Hyten said, to be somehow substantively unreasonable. And in light of the gruesome behavior and in light of the district court's explanation, quite accurately, of the heinous injury that was inflicted upon these poor victims, what in the world, what grounds do we have for saying, oh, what you did was unreasonable? Respectfully, Your Honor, we don't agree that the district court set forth detailed reasons in support of its sentence. You know, the district court engaged in an extended discussion of the severity of the offense conduct and it listed several of the identified factors as potential bases for departure in Chapter 5 of the guidelines. But the critical omission here, as required by Rubicki, as required by this court's general standards of review even under Booker, even under Gall, the district court made no effort to compare the severity of the offense conduct in this case to the severity of the offense conduct contemplated by the heartland of the advisory guidelines that already served as the basis for Mr. Strother's guidelines range. And so that linkage is missing. Well, there are not all that many other cases out there which afford a basis for comparison, given the two different shootings, each of which had its own gruesome facts surrounding it. I mean, how many comparable offenses are there out there? Not that many. I have four cases involving severe physical injuries to law enforcement officers out of the Eastern District over the last couple of years, Your Honor. In August, the Eastern District sentenced Daniel Locklear to 180 months. This is right up there with capital punishment, I mean, with capital sentences. I mean, in a sense, the defendant is lucky to have not had a capital charge because the injuries inflicted stopped just short of taking the person's life. But I just don't know how many comparable situations there are. As a descriptive matter, Your Honor, these cases tend to fall far below de facto life sentences. In August, Daniel Locklear fired 16 times into a gas station and severely injured an off-duty law enforcement officer. That's only one of the 3553A factors to which you've alluded. There are others, including deterrence of future behavior and punishment and heading off recidivism and the rest. Comparison shopping is only one of many. I apologize, Your Honor. Where in the briefing would I find the comparison to Locklear? I want to be able to look at them, but where is this in the briefing? I prepared those for discussion at argument today, Your Honor. So this is not an argument that you made in the briefs? We didn't have these case references in the briefs, Your Honor. I apologize. All right. As far as substantive, you know, as far as the alternative variants, I would also just point this court to this court's recent decision in Florentine, where this court kind of explicitly suggested that a district court can't insulate a sentence from vacatur through a general statement that it would have imposed the same sentence regardless of any error. This case closely resembles that, in our view, Your Honor, and I'm happy to discuss that further, but I see my opening time has expired, unless the panel has questions. Thank you, sir. Thank you. Ms. Noakes, pleased to hear from you. Good morning, Your Honors. May it please the Court, Sarah Noakes, on behalf of the United States, asking you to affirm the judgment of the district court. Here, the district court reasonably imposed a 720-month sentence for the defendant's crimes, which it called horrifying and extraordinary. This case is about the defendant's 48-hour rampage, during which he shot a police officer in the neck with a high-powered rifle, and then during the ensuing manhunt, he ambushed a grandfather, carjacked him, and then shot him three times, causing, as Judge Wilkinson has pointed out, heinous injuries to that person. Then the next day, when police finally caught up with him, he raised that same rifle as if to fire on them. It was set to fire, the safety was set to fire, he pointed it at police, but thankfully he was apprehended without further injury. Now, the court in this case reached this sentence after accurately calculating the guidelines, and it seems that my colleague has questioned whether the guidelines were accurately calculated. The only variance here really was with respect to count three, wasn't it? That is correct, Your Honor, because for count two, there was a sentence imposed by the court of 420 months, but the guidelines recommendation was 360 to 420, so there wasn't any variance with respect to count two of this indictment, and the variance here was with respect purely to one count. He followed the guidelines recommendation elsewhere, and the variant sentence was from 120 to 300 months, and that's what we need to focus on, just that variation, not other aspects of it. I don't think there's any objection raised to the fact that these were consecutively imposed or what have you, it's just that variation, and your straightforward argument is that in light of the heinous nature of these particular offenses, that the variant sentence was amply explained and amply justified. That is correct, Your Honor, but it wasn't just the circumstances of the offense. The district court conducted a thorough and individualized assessment of the defendant as a person and of his crimes, and then considered all of the 3553A factors, the goals for federal sentencing, and applied the logic in that to this defendant and his crimes to come up with his sentence. As to the nature and circumstances of the offense, which again it called extraordinary, including the defendant's attempts to kill two people, infliction of horrifying injuries resulting in amputated fingers, surgeries, loss of internal organs, and the ripple effect of psychological trauma on these victims' families and on the community, the district court noted that other than murder, it really couldn't get more serious than this. These circumstances are about as serious as it gets. Then the district court turned to this particular defendant, and the district court considered defense counsel's mitigation arguments as sentencing, but it also considered the fact that this man had a 17-year criminal history, which included violence, unlawful weapons possession, resisting arrest, property crimes, and drug offenses. He had repeated failures while under probation supervision, including by the commission of these actual offenses, because he was on a post-release term of supervision for the last time he seriously injured a cop. The North Carolina rap sheet has to be seen to be believed. Yes, sir, your honor. We would agree. Can I ask you, unclear to me if this affects this particular case, but I have a couple of questions. I think from your brief that you kind of agree that to the extent the district court relied on 5K2.21, that was actually just wrong under the guidelines. Yes, your honor. We have conceded. But then what you move on to say is, well, no, this couldn't support. I'm going to get the numbers wrong, but as I recall, the district court gives two reasons. Identifies two provisions of the guidelines. You say one of them is valid. You concede one of them is valid, but suggest that in fact one that the district court didn't cite could have also supported the departure. Are we allowed to do that? That seems a little strange that like we're allowed to say the court was wrong to rely on the provision it actually cited, but the things it cited could have supported under an abusive discretion review reliance on a different one. So we're going to assume that it relied on the one it could have relied on as opposed to the one it actually cited. Your honor, the importance is that the factors that the district court was considering. So in that 5K2.21 analysis, it was considering the fact that the bullet from that high powered rifle. No, no, I'm not asking you about the facts. I'm asking you a conceptual question about when a district court gives a reason. Well, sorry, the district court gives a reason and identifies a provision of the guidelines that it believes apply to that reason. And in a reviewing court, in part because of the candor of the government when it concedes. Actually, that doesn't work. You can't do that. I'm just not sure that as a matter of appellate review, we can then say, but then we can jump to another provision the district court didn't rely on in defending the sentence the district court imposed. I'm just not sure conceptually that works. Well, the other provision here is sort of a catch-all provision for departure. But that's not the provision the district court relied on. And that's fine. The district court sentence is saved in all ways. No, again, I preface this by saying I'm not sure it affects the outcome of this case. I just, I just am not sure. Like, I'm just not, we give district courts lots of discretion, but I'm not sure as part of giving discretion we can say, let's assume they relied on a provision that they didn't cite and say, well, we'll save the sentence that way. I'm just not sure. And I didn't see any authority in your brief for the proposition that we're allowed to do that. We do that. We do that in like evidentiary context, right? We have said that if the district court cites a hearsay provision that doesn't apply, as long as a different provision would apply, that it's not an abuse of discretion. Is there a reason to think I have no insight into this is not a loaded question. Sometimes I ask loaded questions. You may notice that. But this is like totally curious. Is there a reason to think that like that evidentiary line is different from the sentencing line? They're both places where we would give like a lot of discretion to our district court colleagues. I don't think that there's a clear line here. Really? Because I think one of the justifications for the evidentiary context is trials are hard and making decisions on the fly in the moment. People say a lot of things. They pop out of their mouth. We're not going to fly spec what a district court says in overruling an objection in the middle of the trial. But like this is what the court literally said in sentencing a criminal defendant. That is correct, Your Honor. But the standard of review is the same for both. The same abuse of discretion. So we don't think that it makes a difference here. But don't take our word for it. You can look at prior cases where courts have determined that one departure provision used by a district court in imposing a sentence didn't work. It was a bad departure provision. And yet they still said, well, if the court would have imposed the same sentence and the grounds that the court considered weren't, you know, not allowed, then it's perfectly fine. And I know we've said that. Let me ask you about the real. I was asking your friend on the other side a question about the relationship and why I think one type of thing doesn't work. But but I'm also thinking that it can't possibly be fully right. So let me give you this hypo and ask you how you would work through it. Say a judge relies on an obviously improper round to depart significantly upward, like obviously flagrantly, no even arguable basis of doing it. And I mean, maybe even one that violates the Constitution. Right. Like the court relies on it for a departure or something that is flagrantly illegal and maybe even unconstitutional. And then after that says and if I was wrong to do that, I'd impose the exact same sentence under thirty five fifty three. And here's a really detailed explanation of why I think it's warranted under thirty five fifty three. And in the course of saying that they say nothing illegal or unconstitutional. Would we really apply harmless error even then? Like and ignore the fact that the district court said something flagrantly illegal when giving its primary justification for imposing the sentence. In that instance, if the court relied on facts that it could not rely on, say a defendant. And that even if a district court later said, oh, and by the way, if I wasn't supposed to do the thing I just said, I do this for totally permissibly thirty five fifty three reasons, we would still look through that probably. Right. That is true. But we would not apply the Rebicki analysis. But we're doing. But wait there. Not to fly spec the question, but there seem to be two moves that are making there. One is to say. That. If it's an unconstitutional consideration. Right. Which is the example you gave that that would be one question. Right. And I understand you to say if the judge says, you know, that based on some guideline provision, I'm going to sentence him to a longer time because he's black. We might not worry too much about harmless error on the back end. Understand that. But I took the question to also encompass. What if there's just like an egregious error, nonconstitutional, but egregious improper departure provision that has no basis? I take your answer would be different there because the very nature of sort of a non binding guidelines means it doesn't matter whether it was like a ridiculous decision or not. As long as it wasn't like unlawful from like a equal protection ground. That's correct. As long as it wasn't an abuse of discretion. Right. And I take your point. I think that that's a good distinction to make between an unconstitutional factor and a factor that maybe doesn't align with a particular departure provision that the court cited. I think we can't get too caught up in which particular departure provision the court cites because what's important is that it took all of the right factors into consideration. So on the come back to the point that Judge Hytens may have been making earlier here. Isn't there in actuality a different standard of review for variant sentences than there was under the old departure regime? Under the old departure regime, we were tied very closely to whether there was a specific grounds for departure suggested by the guidelines. We went through all of that. But under the variant sentencing, it's much more open than departure sentencing. And the district court's discretion is probably at its zenith in a variant sentencing situation. And in a variant sentencing situation, wouldn't we have a greater latitude to look at any departure in terms of just general reasonableness? And if a sentence is generally a reasonable one and if it's explained to the point that it's in concrete and that a remand would do no good, isn't it permissible to look ultimately at whether the sentence as a whole as well as a variation is consistent with Congress's view in the 3553A factors? I mean, I'm just wondering whether we have a good deal more leeway and whether district courts have a good deal more leeway and appellate courts have a good deal more leeway in saying, as long as your sentence is reasonable and it squares up with the 3553A factors, we're going to not casually reverse on abuse of discretion grounds. I mean, that seems to me kind of where we're headed in this whole area, gradually, step by step, restoring a greater degree of sentencing discretion in district courts, which is where I think Gall was pointing to in the first place. And there have been some detours in getting to where we are now, but that seems to me kind of where we are with respect to variant sentencing. Yes, Your Honor, we'd absolutely agree with you. And we would also suggest that that's one of the main reasons why we can tell that Rybicki is no longer good law, because it lays out this five-step process for district courts to follow when they are going to impose a departure, premised, of course, upon the mandatory guidelines regime, and then lays out five standards of review. I guess step two doesn't really have a standard of review. So four standards of review that are at least in some ways different than abuse of discretion. Post Booker, Gall, and Rita, the only standard of review for a district court sentence is abuse of discretion. So Rybicki is absolutely contrary to what we know the law is as it is now. We're only looking at a sentence for abuse of discretion. And here, the district court simply did not abuse its discretion. I've discussed the nature and circumstance of the offense, defendant's history and characteristics. The district court took seriously its obligation to consider all of the 3553A factors. It said that it needed to balance the reality of the horrifying life the defendant had lived and the pain he'd inflicted on so many people, and that it needed to protect society from this individual. There was a dire need to protect society from this individual who's shown himself time and again to be violent, time and again failing to conduct himself in a way that is required by citizens at large. The court also noted the need to deter others who might want to live in the way that this particular defendant had lived, and considered all the other listed 3553A factors, and then imposed its 720-month sentence. I would note- Is there anything further, Ms. Noakes? Do you have anything further? If there are no further questions- Well, maybe our colleagues have some further questions. We have no further questions. Thank you. We'd ask you to affirm the judgment- Mr. Prescott, you've got some rebuttal time, sir. Thank you, Your Honor. If the panel is willing to entertain the rebuttal time, I just wanted to focus back on the substantive reasonableness and the overall scale of the sentence. The offense conduct and the crimes and the injuries in this conduct are horrific, Your Honor, and we're not here to dispute that, and Mr. Strother specifically told me not to dispute that. The argument that we're here to make is that not only was the offense conduct extremely severe, the sentence imposed in this case is also stratospherically unbelievably severe. In this case, where the specific offense conduct with relation to Deputy Key and Mr. Goff was heavily considered by the underlying sentencing guidelines range, the District Court-Senate substantive reasonableness analysis became unhinged from the appropriate consideration of the guidelines, even after Booker, even after Gall. If these specific facts of the case hadn't been considered as part of Mr. Strother's guidelines range, the recommended sentence would have been 180 to 240 months imprisonment, which actually, I won't go into it, but that aligns closely with the range of sentences typically imposed by the Eastern District of North Carolina in conjunction with crimes involving severe physical injuries to law enforcement. But the District Court and the Probation Office did consider those factors, and instead it enhanced Mr. Strother's guidelines range by at least 11 offense levels in addition to the statutory maximum, which added about 25 to 30 years alone to his sentence based on what the base guidelines range would have been without consideration of those factors. And then the District Court and the government at sentencing recited essentially the same list of factors relating to the severity of the offense conduct and cited those, again, with no comparison, with no balancing analysis, with no effort to even determine the boundaries of the heartland of the applicable sentencing guidelines, listed essentially the same factors and concluded that they supported an additional sentence enhancement of 15 years imprisonment. And so that's why, Your Honors, we believe that this case is essentially analogous to Nixon from earlier this year where the compounded procedural errors yielded a guidelines range completely out of step with the circumstances of the case. And just to clarify, our argument isn't that the guidelines, the base guidelines range, was calculated incorrectly, but our argument is that the District Court's application of the departure clause in Section 3553B1 contradicted the statutory authority for imposing that sentence. It contradicted this Court's published mandatory guidance of Rybicki, which hasn't been overruled or undermined in any way that weakens its stare decisis. And as a result, the District Court proceeded with a guidelines ballpark that was just way, way, way, 30 years, 40, 50 years out of line with the normal range of sentences considered by the Eastern District of North Carolina for defendants who are involved in this kind of offense conduct. And it's very possible, Your Honors, that the District Court did conclude . . . It seems to me hard to find similarly situated individuals, and that doesn't relate solely to the nature of these two offenses, which, of course, were the most heinous. But the North Carolina rap sheet is pretty formidable. There are just a huge number of offenses over and over and over again. And so you have here the combination of the two instant offenses and then the history of the North Carolina criminal activity. And so it isn't just lining up when you say, well, we've got to consider similar offenses. But there are not this many people with two different murderous offenses and a long, extended rap sheet. It really is quite . . . it almost takes some time to get through it. It's so lengthy. And that makes finding comparable situations more difficult. That may be true, Your Honor, but our position . . . we would respectfully argue that the District Court is obligated, as this Court has held in Moreland and in Nixon and over and over again, the District Court was required . . . the burden was on the District Court to provide an extremely compelling justification for this extraordinary departure from the base guidelines range. And it's possible that the facts of this case really did fall with outside the heartland of the applicable sentencing guidelines as required by Section 3553b1. But there's no way . . . it's very . . . because the District Court was required to compare it to the normal severity and it never even mentioned the normal severity. Thank you very much. Thank you, Your Honor. We have no further questions. And I want to express also the appreciation of the court. I see that you're court-appointed and you've ably discharged your duties and we do thank you. We'll adjourn court and come down and say hi to everyone. While I'm at it, I want to thank our fine courtroom . . .
judges: J. Harvie Wilkinson III, Julius N. Richardson, Toby J. Heytens